1677.10859W

1  RANDALL E. WILLOUGHBY - 43177
      REW@wsblaw.net
2  ELLYN E.  NESBIT - 136398
      EEN@wsblaw.net
3  WILLOUGHBY, STUART & BENING, INC.
   50 W. San Fernando St., Suite 400
4  San Jose, California 95113
   (408) 289-1972
5  Facsimile: (408) 295-6375

6  Attorneys for Defendant
   Salinas Golf and Country Club, Inc.

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11  PHILADELPHIA INDEMNITY            )   No.  C08 01773 JF
    INSURANCE COMPANY, a              )
12  Pennsylvania corporation,         )
                                      )   **SALINAS GOLF and COUNTRY**
13                                    )   **CLUB INC.'s  OPPOSITION to**
                Plaintiff,            )   **Motion by United States Liability**
14                                    )   **Insurance Company for Dismissal of**
    vs.                               )   **Counterclaim, and in the Alternative,**
15                                    )   **Motion for a More Definite Statement**
    SALINAS GOLF and COUNTRY          )   **(FRCP Rules 12(b)(6) & 12(e).**
16  CLUB, Inc., a California corporation )
    and RUSSELL BAAR, an individual   )
17                                    )   **Date:   September 26, 2008**
                Defendants.           )   **Time:   9:00 a.m.**
18                                    )   **Courtroom:  3**
                                      )
19  ──────────────────────────────   )
    SALINAS GOLF and COUNTRY          )
20  CLUB, Inc., a California corporation )
                                      )
21                                    )
                Counterclaimant,      )
22                                    )
    vs.                               )
23                                    )
    PHILADELPHIA INDEMNITY            )
24  INSURANCE COMPANY, a              )
    Pennsylvania corporation; and     )
25  UNITED STATES LIABILITY           )
    INSURANCE COMPANY, a              )
26  Pennsylvania corporation,         )
                                      )
27                Counterdefendants.  )
                                      )
28  ──────────────────────────────

Opposition to Motion to Dismiss/Motion for
More Definite Statement

1

**TABLE OF CONTENTS**

2

**Page No.**

3    I.    Standards Governing FRCP Rule 12(b)(6) Motions . . . . . . . . . . . . . . . . . . . . . . . . .  1

4    II.    Salinas Golf Has Stated a Viable Claim for Breach of Contract  . . . . . . . . . . . . . . .  2

5          A.    The Allegations Ignored by USLI  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

6          B.    The Pertinent Policy Provisions Omitted in USLI's Motion  . . . . . . . . . . . . .  4

7          C.    The Pertinent Case Law Omitted in USLI's Motion . . . . . . . . . . . . . . . . . . .  4

8    III.    Salinas Golf Has Stated a Viable Claim for Breach of the Covenant
          of Good Faith and Fair Dealing  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

9
      IV.    Salinas Golf Has Sufficiently Pled Punitive Damages  . . . . . . . . . . . . . . . . . . . . . .  16

10
      V.    Leave to Amend  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

11
      CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

Page No.

3

**Federal Authority**

4

*Amadeo v. Principal Mutual Life Insurance Co.*
5    (9th Cir., 2002) 290 F.3d 1152 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

6    *Asher v. Reliance Insurance Co.*
(D.C. Cal., 1970) 308 F.Supp. 847 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11
7

8    *Bernstein* v. *Travelers Insurance Co.*
(N.D.Cal., 2006) 447 F.Supp.2d 1100 . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14
9

*Clark v. Allstate Insurance Company*
10    (S.D.Cal., 2000) 106 F.Supp.2d 1016 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

11    *Doe and Roe v. Hagee*
(N.D. Cal., 2007) 473 F.Supp.2d 989 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
12

13    *Gallardo v. DiCarlo*
(C.D.Cal., 2002) 203 F.Supp.2d 1160 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
14

*Gilligan v. Jamco Development Corp.*
15    (9th Cir., 1977) 108 F.3d 246 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

16    *Guebara v. Allstate Insurance Co.*
(9th Cir., 2001) 237 F.3d 987 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 11
17

18    *Lee v. City of Los Angeles*
(9th Cir., 2001) 250 F.3d 668 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2
19

20    *Lopez v. Smith*
(9th Cir., 2000) 203 F.3d.1122 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 17
21

*McCalden v. California Library Association*
22    (9th Cir., 1990) 955 F.2d 1214 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

23    *Nordberg v. Trilegiant*
(N.D.Cal., 2006) 445 F.Supp.2d 1082 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
24

25    *Orion Tire Corp. v. Goodyear Tire & Rubber Co.*
(9th Cir., 2001) 268 F.3d 1133 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
26

27    *Peloza v. Capistrano Unified School District*
(9th Cir., 2004) 37 F.3d 517 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
28

ii

1
*Pergram v. Herdrich*
2
(2000) 120 S.Ct. 2143, 530 U.S. 211 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

3
*Summit Technology, Inc. v. High-Line Medical Instruments, Co.*
(C.D.Cal., 1996) 933 F.Supp. 918 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
4

5
*Thompson v. Davis*
(9th Cir., 2002) 295 F.3d 890 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6
*United States v. City of Redwood City*
7
(1981) 640 F.2d 963 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

8
**California Authority**

9
*Amato v. Mercury Casualty Co.*
10
(1997) 53 Cal.App.4th 825 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

11
*Campbell v. Superior Court*
(1996) 44 Cal.App.4th 1308 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
12

13
*Careau & Co. v. Security Pacific Business Credit, Inc.*
(1990) 222 Cal.App.3d 1371 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

14
*Comunale v. Traders & General Ins. Co.*
15
(1958) 50 Cal.2d 654 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

16
*Egan v. Mutual of Omaha*
17
(1979) 24 Cal.3d 809, 819 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18
*Foley v. Interactive Data Corp.*
(1988) 47 Cal.3d 654 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
19

20
*Freeman & Mills, Inc. v. Belcher Oil Company*
(1995) 11 Cal.4th 84 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

21
*Friedman Professional Management Co., Inc. v. Norcal Mutual Insurance Company*
22
(2004) 120 Cal.App.4th 17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

23
*Gruenberg v. Aetna Insurance Co.*
24
(1973) 9 Cal.3d 566 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

25
*Helfand v. National Union Fire Insurance Co.*
(1992) 10 Cal.App.4th 869 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
26

27
*Homestead Insurance Co. v. American Empire Surplus Lines Insurance Co.*
(1996) 44 Cal.App.4th 1297 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28

*Horace Mann Insurance Co. v. Barbara B.*
(1993) 4 Cal.4th 1076 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Jordan v. Allstate Insurance Co.*
(2007) 148 Cal.App.4th 1062 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

*Kransco v. American Empire Surplus Lines Ins. Co.*
(2000) 23 Cal.4th 390 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Mariscal v. Old Republic Life Insurance Co.*
(1996) 42 Cal.App.4th 1617 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Melugin v. Zurich Canada*
(1996) 50 Cal.App.4th 658 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Miller v. Elite Ins. Co.*
(1980) 100 Cal.App.3d 739 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Montrose Chemical Corp. v. Superior Court*
(1993) 6 Cal.4th 287 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Mosier v. Southern California Physicians Insurance Exchange*
(1998) 63 Cal.App.4th 1022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Mullen v. Glens Falls Ins. Co.*
(1977) 73 Cal.App.3d 163 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Seaman's Direct Buying Service, Inc. v. Standard Oil Co.*
(1984) 36 Cal.3d 752 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Shade Foods v. Innovative Products Sales & Marketing, Inc.*
(2000) 78 Cal.App.4th 847 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

*Silberg v. California Life Ins. Co.*
(1974) 11 Cal.3d 452 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Vandenberg v. Superior Court*
(1999) 21 Cal.4th 815 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Walbrook Ins. Co. v. Liberty Mutual Ins. Co.*
(1992) 5 Cal.App.4th 1445 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wilson v. 21st Century Insurance Co.*
(2007) 42 Cal.4th 713 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

iv

1  **<u>Federal Statutes and Rules</u>**

2  28 U.S.C. §2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

3  F.R.C.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
4

5  F.R.C.P. Rule 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 11

6  **<u>California Statutes</u>**

7  Civil Code §2860 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

8  Civil Code §3294 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States Liability Insurance Company's[1] motion fails to address the dispositive issue in this case: whether the underlying Hedberg action is interrelated with the action filed by underlying plaintiff Pitre during the USLI policy period.  USLI premises its motion on select policy provisions, while excluding all mention of the policy provisions relevant to this issue.   USLI omits any discussion of the case law relevant to this issue.  USLI cannot prevail on a motion to dismiss by deliberately omitting the key issue, policy provisions, and case law relevant to this action.   USLI's motion for a more definite statement is likewise frivolous in that among other infirmities, the motion is improperly premised on state rather than federal pleading standards.

## I.  Standards Governing FRCP Rule 12(b)(6) Motions

Motions to dismiss are viewed with disfavor and rarely granted.  *Gilligan v. Jamco Development Corp.* (9th Cir., 1977) 108 F.3d 246, 249.   The Federal Rules require only a short and plain statement of the claim showing that the pleader is entitled to relief.  This liberal pleading standard contains "a powerful presumption against rejecting pleadings for failure to state a claim".  *Id.*

A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *Thompson v. Davis* (9th Cir., 2002) 295 F.3d 890, 895.   Under this rule, it is only the extraordinary case in which dismissal is proper.  *United States v. City of Redwood City* (1981) 640 F.2d 963, 966.

Factual challenges to a complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6). *Lee v. City of Los Angeles* (9th Cir., 2001) 250 F.3d 668, 688.  All factual allegations are taken as true and construed in the light most favorable to plaintiff.  *Id.*  On a motion to dismiss, the court assumes that all general allegations of the complaint embrace whatever specific facts might be necessary to support them.  *Peloza v. Capistrano Unified School District* (9th Cir., 2004) 37 F.3d 517, 521.  *Lopez v. Smith* (9th Cir., 2000).

---

[1] "USLI"

1    In deciding a motion under F.R.C.P. 12(b)(6), not only should the complaint be

2    construed generously, but the plaintiff's brief may be used to clarify allegations in the

3    complaint whose meaning is unclear. *Pergram v. Herdrich* (2000) 120 S.Ct. 2143, 2155 fn.

4    10; 530 U.S. 211; *Orion Tire Corp. v. Goodyear Tire & Rubber Co.* (9th Cir., 2001) 268

5    F.3d 1133, 1138.

6    On a motion to dismiss, the court may consider materials that are submitted as part of

7    the complaint, and may consider matters that are subject to judicial notice. *Lee v. City of Los*

8    *Angeles, supra* at 688-689.  A court may consider documents which are not physically

9    attached to the complaint, if the complaint necessarily relies on them. *Lee* at 688-689.

10   The party bringing the motion to dismiss has the burden to demonstrate that the

11   minimal pleading requirements of F.R.C.P. 8(a)(2) have not been met. *Gallardo v. DiCarlo*

12   (C.D.Cal., 2002) 203 F.Supp.2d 1160, 1164-1165.

13   ## II.  Salinas Golf Has Stated a Viable Claim for Breach of Contract

14   USLI is correct that the elements of a cause of action for breach of contract are as

15   follows:  1) a contract; 2) plaintiff's performance or excuse for non-performance;

16   3) defendant's breach; and 4) damages. (Motion, pg. 7:21-24).  Salinas Golf has alleged all

17   of these elements in its Counterclaim. (Counterclaim, ¶¶9, 22-27, and prayer).

18   Notwithstanding the fact that the Counterclaim states a viable claim on its face,

19   USLI improperly attempts to obtain a dismissal by virtue of a motion which deliberately

20   omits all discussion of the key issue, case law, and policy provisions which are dispositive of

21   coverage  in this action.  As explicitly set forth in the Counterclaim, the obligations of the

22   insurers in this case turn on the issue of whether the claim made by Hedberg in the

23   underlying action is "interrelated" with the prior claim made by Pitre during the USLI policy

24   period.

25   ### A.  The Allegations Ignored by USLI

26   The Counterclaim alleges the following:

27   That USLI and Philadelphia Indemnity Insurance Company ("Philadelphia

28   Indemnity") issued policies to Salinas Golf for consecutive years. (Counterclaim ¶¶8, 9);

Opposition to Motion to Dismiss/Motion for
More Definite Statement

2

1    That Philadelphia Indemnity contends that it has no duty to defend or indemnify

2 because despite the fact that Hedberg's action was filed during Philadelphia's policy period,

3 Hedberg's claim is "interrelated" with Pitre's claim made during the prior policy period, and

4 that Hedberg's claim is therefore deemed to have been made during the prior policy period.

5 (Counterclaim ¶17);

6    That Salinas Golf contends that USLI, Philadelphia Indemnity, or both insurers have

7 a duty to defend and indemnify.  (Counterclaim ¶18);

8    Salinas Golf reincorporates by reference all of these allegations into the Breach of

9 Contract claim.  (Counterclaim ¶21).

10    USLI also ignores the Complaint filed in this action by Philadelphia Indemnity,

11 which prompted the Counterclaim against USLI.[2]  The Counterclaim must be construed in

12 the context of Philadelphia Indemnity's allegations which are also at issue in this action:

13    13.  The Amended Complaint includes the allegations made by Pitre in the Draft
Complaint, as well as details the circumstances under which Hedberg was allegedly

14    forced to resign.  The Amended Complaint (like the Draft Complaint) alleges that a
"motivating factor" for the Club's ending of Hedberg's employment was Hedberg's

15    support of "Pitre's efforts to enjoy a harassment-free work environment, and
because he had refused to fire [Pitre] so that Club could be rid of her and avoid the

16    liability about which Hedberg had warned" the Club's management.

17    24.  The claims by Pitre were first made prior to November 26, 2005, and, on
information and belief, USLI defended those claims.  With respect to the Amended

18    Complaint pertaining to Hedberg, as the allegations are Interrelated Wrongful Acts,
the Claim as represented by the Amended Complaint is deemed, per operation of

19    Part 8, IV. C, quoted above in paragraph 22, to have been made when the first
Claim was made, which was on October 25, 2005, prior to the inception of the

20    policy.

21    27.  In both the Draft Complaint and the Amended Complaint, the wrongful acts,
facts and circumstances at issue - the alleged discharge of both Pitre and Hedberg,

22    which focus on alleged harassment and hostile work environment at the Club - arise
from the same or Interrelated Wrongful Acts.  The allegations of the sexual

23    harassment of Pitre, Hedberg's warning to Club management with respect to the
potential liability to the Club arising from Baar's conduct, and Hedberg's support of

24    "Pitre's efforts to enjoy a harassment-free work environment," are central themes of
both the Draft Complaint and the Amended Complaint.  Therefore, Hedberg's

25    claims in the Amended Complaint are interrelated with Pitre's claims made in the
Draft Complaint.

26

27    28.  Written notice of these wrongful acts, facts and circumstances was given to
USLI in connection with the Club's tender of defense of the claim first made by

28
─────────────────
[2]Request for Judicial Notice filed herewith.

Opposition to Motion to Dismiss/Motion for
More Definite Statement

Pitre on October 25, 2005. Because the Allegations in the Amended Complaint "arise out of, are based upon, or are attributable to" the allegations in the October 25, 2005 correspondence and the Draft Complaint, Exclusions F.1. and F.2. apply.

## B.   The Pertinent Policy Provisions Omitted in USLI's Motion

### III.  Definitions

**S.  "Wrongful employment act"** means any actual or alleged act of:
  (1)  Discrimination;
  (2)  Harassment;
  (3)  Retaliation;
  (4)  Wrongful Termination;
  (5)  employment related misrepresentation
  (6)  negligent evaluation, training or supervision of Employees;
  (7)  failure to enforce adequate policies and procedures relating to any WrongfulEmployment Act;
  (8)  wrongful discipline
  (9)  wrongful deprivation of career opportunity
  (10) negligent violation of the Family Leave Act of 1993;
  (11) acts described in clauses (1) through (10) above arising from the Organization's Internet, e-mail, telecommunication or similar systems, including the failure to provide and enforce adequate policies and procedures relating to such use of the Organization's Internet, e- mail, telecommunication or similar systems;

* * *

**It is further agreed that the same Wrongful Employment Act, and interrelated series of Wrongful Employment Acts or a series of similar or related Wrongful Employment Acts by one or more Insured shall be deemed to be one Wrongful Employment Act and to have commenced at the time of the earliest Wrongful Employment Act.**

(Counterclaim Ex. B, pg. 4)

### V.  Limits of Liability and Retention

G.  Claims based upon or arising out of the same Wrongful Employment Act, **interrelated Wrongful Employment Acts, or a series of similar or related Wrongful Employment Acts shall be considered a single Claim and shall be considered first made during the Policy Period or Extension Period in which the earliest Claim arising out of such Wrongful Employment Act(s) was first made** and all Defense costs and Loss for such Claims shall be subject to the one Limit of Liability that applies to such earliest Claim

(Counterclaim Ex. B, pg. 6)

## C.   The Pertinent Case Law Omitted in USLI's Motion

Several cases have addressed contentions by successive insurers regarding coverage for suits that were "interrelated" with prior suits.

1    In *Friedman Professional Management Co., Inc. v. Norcal Mutual Insurance*

2  *Company* (2004) 120 Cal.App.4th 17, two suits were filed against insured.  At issue was

3  whether allegations in the second suit were related to allegations of medical malpractice

4  made in the prior suit. *Id.* at 21.  The court found that the claims were related, and that

5  therefore only the first policy applied, and a subsequent policy was not liable for coverage.

6  *Id.* at 21, 32-33.  The court held that the policy provisions[3] served the insured by keeping all

7  related claims within the coverage of the first policy against which the first claim is made.

8  *Id.* at 34.

9    *Friedman* disagreed with an earlier decision, *Homestead v. American Empire*[4], to

10  the extent *Homestead* could be read for a blanket proposition that no claim made after the

11  expiration of a claims made policy could ever be ascribed to that earlier policy. *Id.* at 33. In

12  *Homestead,* two insurers issued claims made policies in consecutive years.  One claim was

13  made against the insured during the first policy period, and a second claim was made during

14  the second policy period.  *Id.* at 1303.   The second insurer contended that once a claim was

15  made, any interrelated later claims related back to the initial claim, and that the first insurer

16  should therefore cover both claims.  *Id.* at 1304-1305.  The court construed the particular

17  definition of "claim" in the context of the policy before it, and rejected the argument that the

18  first policy should cover both claims against the insured, and instead held that each policy

19  covered the claim made during its policy period.  *Id.* at 1300, 1303, 1305.

20    Pursuant to the analysis of these cases, either USLI, Philadelphia Indemnity, or both

21  insurers owe a duty to indemnify, and both insurers owe a duty to defend.  Under the

22  *Friedman v. Norcal Mutual* analysis, Philadelphia Indemnity may ultimately be able shift all

23  liability for indemnity to USLI if Philadelphia Indemnity ultimately can prove that all

24  liability on the part of Salinas Golf for the Hedberg claims is based on wrongful acts that are

25

26    [3]Both policies defined "Occurrence" as a "single act or omission or series of related acts
27  or omissions involving direct patient treatment".  The policies covered "potential claims",
defined as any occurrence which may result in a lawsuit. *Id.* at 26.

28    [4]*Homestead Insurance Co. v. American Empire Surplus Lines Insurance Co.* (1996) 44
Cal.App.4th 1297.

1   interrelated with Pitre's claims.

2        USLI fails to address *Friedman* or *Homestead* in its motion. Instead, USLI merely
3   makes the conclusory assertion that plaintiff's "allegation that its subsequent insurer,
4   Philadelphia Indemnity Insurance Company, claims that the Hedberg claim is 'interrelated'
5   with Pitre's claim does not constitute a fact showing that the Hedberg claim was first made
6   during the USLI policy period". (Motion, pg. 8:10-15). USLI's unsupported conclusion is
7   clearly wrong under the *Friedman* analysis. USLI will undoubtedly attempt to bring itself
8   within the analysis of *Homestead v. American Empire* in this litigation, but it has failed to
9   address the issue in its motion. ULSI has failed to provide any analysis regarding its policy
10  provisions as compared to those at issue in the *Homestead* and *Friedman* cases, and cannot
11  belatedly do so in its Reply. USLI cannot bring itself within the holding of *Homestead*
12  without demonstrating that the policy provisions are analogous and should be interpreted in
13  the same manner in the context of this case, and USLI must demonstrate why the *Friedman*
14  analysis is inapplicable. Coverage must be analyzed in the context of the claim at issue and
15  the specific policy provisions before the court. See *Vandenberg v. Superior Court* (1999) 21
16  Cal.4th 815, 839, 841 (overruling cases which failed to consider the particular coverage
17  language at issue); see also *Helfand v. National Union Fire Insurance Co.* (1992) 10
18  Cal.App.4th 869, 886 (a case which does not discuss or quote the operative provisions is not
19  precedent for subsequent judicial interpretation of language in another insurance policy).

20       USLI contends that the complaint should be dismissed because the Counterclaim
21  alleges that both USLI and Philadelphia Indemnity breached their contracts. (Motion, pg.
22  8:16-28). USLI's contention disregards the rules of pleading. Alternative pleading is
23  permissible. *McCalden v. California Library Association* (9th Cir., 1990) 955 F.2d 1214,
24  1219 (reversing dismissal of a contract claim which had been pled in the alternative).

25       USLI's contention also disregards the fact that both insurers have an obligation to
26  defend. Even if USLI is ultimately able to prove that it does not have an indemnity
27  obligation, it still owes a duty to defend the *Hedberg* claim. The issue of whether the alleged
28  wrongful acts are interrelated depends on questions of fact that are disputed in the underlying

Opposition to Motion to Dismiss/Motion for
More Definite Statement

1  action regarding the reasons for the termination of Mr. Hedberg's employment.  For

2  example, the underlying complaint itself alleges that only a single reason out of an entire

3  "laundry list" of reasons given for Mr. Hedberg's termination was related to Hedberg's

4  refusal to fire Pitre. (Underlying Amended Complaint ¶22)[5].  When the existence of

5  coverage turns on disputed questions of fact in the underlying action, an insurer's duty to

6  defend is established.  *Horace Mann Insurance Co. v. Barbara B.* (1993) 4 Cal.4th 1076,

7  1085.  USLI cannot avoid a defense obligation by unilaterally determining that the reasons

8  for the termination of Hedberg are unrelated to Pitre's claims.  An insurer cannot refuse to

9  defend its insured on the basis that the insured has no legal liability for a claim.  An insurer

10 must defend its insured to establish the insured's legal defenses.  *Melugin v. Zurich Canada*

11 (1996) 50 Cal.App.4th 658, 667.

12     The inclusion of Salinas Golf's claim for declaratory relief (also ignored in USLI's

13 motion) is alone enough to defeat the motion to dismiss. See *Nordberg v. Trilegiant*

14 (N.D.Cal., 2006) 445 F.Supp.2d 1082, 1101 (denying a motion to dismiss declaratory relief,

15 since a decision to deny or allow declaratory relief was premature at the pleading stage.

16 Pursuant to 28 U.S.C. §2201, a court may declare the rights of a party whether or not further

17 relief is or could be sought. *Id.* ).

18     USLI contends that the fact that it initially provided a "courtesy" defense against

19 the Hedberg claim does not establish coverage. (Motion, pg. 9:6-13).  USLI's liability

20 under the Counterclaim does not depend on such a proposition.  Plaintiff contends that

21 USLI owes a duty to defend because the allegations of Hedberg's action potentially trigger

22 coverage under the USLI policy. (Counterclaim ¶23).  USLI's characterization of its initial

23 defense of the Hedberg claim as a "courtesy" defense does not serve to relieve it of any

24 obligations, and in fact establishes obligations on its part.  The extension of a courtesy

25 defense by an insurer is an act which itself creates obligations, even where no coverage is

26 otherwise owed.  See *Mosier v. Southern California Physicians Insurance Exchange* (1998)

27 63 Cal.App.4th 1022, 1040-1043.

28

----

[5]Request for Judicial Notice filed herewith.

## III. Salinas Golf Has Stated a Viable Claim for Breach of the Covenant of Good Faith and Fair Dealing

The elements of a cause of action for bad faith are:

(1) benefits due under the policy were withheld; and

(2) the reason for withholding benefits must have been unreasonable or

without proper cause.

*Guebara v. Allstate Insurance Co.* (9th Cir., 2001) 237 F.3d 987, 992.

Pursuant to F.R.C.P. Rule 8(a), Salinas Golf was merely required to generally aver these elements. The allegations of Salinas Golf's complaint are far more detailed than required under the federal pleading rules:

> 28.    Counterdefendants breached the implied covenant of good faith and fair
>
> dealing and continue to engage in a course of conduct in violation of their
>
> good faith obligations, including but not limited to the following respects:
>
> [allegations a-c against Philadelphia
> Indemnity omitted here]
>
> d.    USLI failed to disclose the conflict of interest created by its reservation of rights letter agreeing to defend the entire complaint, while denying any indemnity obligation with respect to Hedberg's action;
>
> e.    USLI failed to inform SALINAS GOLF of its right to independent counsel as a result of the conflict of interest, and USLI failed to provide independent counsel to SALINAS GOLF;
>
> f.    USLI tortiously breached its obligation to act in good faith and fair dealing by withdrawing its defense without proper cause. The allegations in the Hedberg action were sufficient to establish a potential for coverage and, therefore, that USLI had a duty to defend SALINAS GOLF in Hedberg's action.
>
> g.    USLI failed to conduct a prompt, thorough, impartial and complete investigation to determine whether Hedberg's action was subject to defense and indemnity or potentially could be subject to defense and indemnity under its policy;
>
> h.    USLI unreasonably failed to negotiate toward settlement and to settle Hedberg's action against SALINAS GOLF.

USLI's arguments regarding the bad faith cause of action are faulty in numerous respects.

1   ULSI's "first and foremost" contention is its faulty premise that Salinas Golf "has

2   been unable to establish a proper claim for relief against ULSI for breach of contract".

3   (Motion, pg. 9:19-24; point repeated at 10:25-11:1; 11:9-12).  Plaintiff clearly does not have

4   to "establish" a breach of contract at the pleading stage.  Salinas Golf has adequately pled a

5   breach of contract claim, and ULSI's first argument therefore fails.

6   Secondly, USLI inexplicably ignores insurance precedent, and relies on non-

7   insurance cases to support its argument that tort damages are not recoverable for a contract

8   claim.  (Motion, pg. 10).  The Supreme Court made clear decades ago that insurance cases

9   are a well-established exception to that rule.  *Foley v. Interactive Data Corp.* (1988) 47

10  Cal.3d 654, 684.  For a variety of policy reasons, breach of the covenant of good faith and

11  fair dealing in an insurance contract will provide the basis for an action in tort.  *Id*.  The

12  *Foley* opinion elaborates on the "well-developed" judicial history extending back half a

13  century which addresses the exception permitting tortious bad faith claims in the insurance

14  context. *Id*. at 684-685.

15  USLI disregards the entire body of insurance law.   USLI instead relies on *Freeman*

16  *& Mills, Inc. v. Belcher Oil Company* (1995) 11 Cal.4th 84, but this decision expressly

17  recognized the exception which permits tort claims for breach of the covenant of good faith

18  and fair dealing in the context of insurance contracts.  *Id*. at 91.  Furthermore, *Freeman* only

19  decided the entirely separate question of whether a cause of action exists for "bad faith

20  denial of the existence of a contract".  *Id*. at 88.  *Freeman* overruled a prior decision[6] which

21  had held that a viable cause of action existed when a party in bad faith denied that the

22  contract existed.  *Id*. at 87-88, 92.  *Freeman* overruled the *Seaman's* decision "in favor of a

23  general rule precluding tort recovery for *noninsurance* contract breach".  *Id*. at 102

24  (emphasis added).  The court explicitly stated:

25  > We emphasis that nothing in this opinion should be read as

26  > affecting the existing precedent governing enforcement of the

27  > implied covenant in insurance cases.  *Id*. at 103.

28

[6]*Seaman's Direct Buying Service, Inc. v. Standard Oil Co.* (1984) 36 Cal.3d 752, 768

1    The decision in *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222

2  Cal.App.3d 1371 relied on by USLI also refutes rather than supports USLI's arguments. The

3  *Careau & Co.* decision likewise was not an insurance case; the court adjudicated issues

4  regarding an alleged binding commitment to provide debt financing for a leveraged buyout.

5  *Id.* at 1379. The court upheld a demurrer, since a tort cause of action was not available in a

6  non-insurance case, and since plaintiff only alleged a duplicative claim for contract damages.

7  *Id.* at 1401. USLI has omitted the pertinent portion of the discussion in *Careau & Co.*

8  regarding a "duplicative" contract claim. The court stated that the allegations may be

9  regarded as superfluous as no additional claim is actually stated *if* "the allegations do not go

10  beyond the statement of a mere contract breach and, relying on the same alleged acts, simply

11  seek the same damages or other relief already claimed in the companion contract cause of

12  action". *Id.* at 1395. That is clearly not the case in Salinas Golf's Counterclaim.

13  Furthermore, *Careau & Co.* expressly recognized that "in insurance cases there is a well-

14  developed history recognizing a tort remedy for breach of the implied covenant". *Id.* at

15  1395. The court adjudicated only the issue of whether tort recovery was available in non-

16  insurance cases. *Id.* at 1399.

17    Contrary to USLI's contentions, the tort of breach of the covenant of good faith and

18  fair dealing is alive and well in the insurance context, and the tort does not require "conduct

19  extraneous to the contract", as USLI argues. (Motion pg. 10). An insurer is liable for bad

20  faith where it has asserted a coverage position that is unreasonable. *Gruenberg v. Aetna*

21  *Insurance Co.* (1973) 9 Cal.3d 566, 575; *Guebara,* supra at 992.

22    USLI's motion is defective for the further reason that USLI has failed to meet its

23  burden to prove beyond a doubt that Salinas Golf is entitled to *no* relief. In *Asher v.*

24  *Reliance Insurance Co.* (D.C. Cal., 1970) 308 F.Supp. 847, the insurer moved to dismiss on

25  the grounds that plaintiff's cause of action sounded in contract (for breach) rather than in

26  tort (for fraud) as plaintiff claimed. *Id.* at 850. The insurer argued that the claims against

27  the insurer for punitive and consequential damages and mental suffering were defective,

28  since the cause of action sounded in contract rather than tort. The court held that even if

1    that was true, it would be obliged to deny defendant's motion. "The fact that certain

2    elements or forms of relief may be unavailable under a stated cause of action does not

3    render that cause of action susceptible to a motion to dismiss. A complaint is not to be

4    dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in

5    support of his claim which would entitle him to relief". *Id.* at 850-851. See also *Summit*

6    *Technology, Inc. v. High-Line Medical Instruments, Co.* (C.D.Cal., 1996) 933 F.Supp. 918,

7    927-928 (dismissal will not be granted "merely because a plaintiff requests a remedy to

8    which he or she is not entitled. It need not appear that plaintiff can obtain the *specific* relief

9    demanded as along as the court can ascertain from the face of the complaint that *some* relief

10    can be granted"). (Emphasis original; internal citations omitted).

11        USLI further argues that plaintiff fails to allege a single fact showing that a conflict

12    of interest exited, and that plaintiff has failed to provide support for a claim that USLI had a

13    duty to advise it that a conflict of interest existed. (Motion pg. 10:21-25). Both assertions

14    are spurious. Salinas Golf had no obligation under Rule 8(a) to enumerate the conflict of

15    interest as a specific basis for USLI's bad faith liability. Salinas Golf merely had to

16    generally allege that policy benefits were unreasonably withheld. See *Guebara, supra* at

17    992. However, Salinas Golf not only enumerated a conflict of interest as a basis for bad

18    faith liability, but it also described the nature of the conflict. (Counterclaim ¶28d set forth

19    above). Furthermore, Salinas Golf had no obligation to cite to legal authority in the

20    complaint regarding USLI's duty to advise of a conflict of interest and provide independent

21    counsel. These duties are established by Civil Code §2860.

22        USLI repeats its vacuous argument regarding the fact that the complaint also

23    includes allegations against Philadelphia Indemnity. (Motion pg. 11:2-9). As previously

24    discussed, the fact that Philadelphia Indemnity may ultimately be found liable in addition to

25    or instead of USLI is irrelevant to the issue of whether the counterclaim states a viable

26    cause of action. Alternative pleading is permissible. *McCalden v. California Library*

27    *Association, supra,* 955 F.2d at 1219. As discussed above, even if only one insurer is

28    ultimately liable for indemnity, both insurers owe a duty to defend.

Opposition to Motion to Dismiss/Motion for
More Definite Statement

1  USLI's commentary regarding the nature of conduct required to establish bad faith

2  liability[7] has nothing to do with the sole question before the court as to whether bad faith has

3  been adequately pled.

4  USLI acknowledges the absence of any authority for adjudicating the "genuine

5  dispute" defense at the pleading stage[8], yet USLI forges ahead anyway. (Motion, pgs. 12-

6  14). USLI's attempt to adjudicate the issue of its liability for bad faith is improper at the

7  pleading stage. USLI asks this court to adjudicate that it has no liability for bad faith solely

8  based on the effective dates of its policy. (Motion, pg. 14:13-14). USLI cannot demonstrate

9  a "genuine dispute" by ignoring the dispositive issue, policy provisions, and case law

10  relevant to this action, as discussed above. USLI's disregard of the potential for coverage

11  for interrelated claims establishes rather than absolves USLI of bad faith liability.

12  USLI cannot escape bad faith liability by merely asserting a genuine dispute based

13  solely on the dates of its policy period for the further reason that when an insurer faces bad

14  faith liability based on several different claims decisions or courses of conduct, an insurer

15  should not be permitted to defeat all of them by showing that there was a genuine issue

16  regarding one. *Bernstein v. Travelers Insurance Co.* (N.D.Cal., 2006) 447 F.Supp.2d 1100,

17  1111. The Counterclaim specifically itemizes other grounds for bad faith liability which

18  USLI fails to address in its motion. Additionally, the issue of bad faith is to be determined

19  on the totality of the circumstances, and any factor tending to establish the presence or

20  absence of bad faith may be considered. *Walbrook Ins. Co. v. Liberty Mutual Ins. Co.*

21  (1992) 5 Cal.App.4th 1445, 1455-1456. Evidence of the "totality of the circumstances" is

22  not before the Court at the pleading stage, and an adjudication of the issue of bad faith is

23  premature.

24  The reasonableness of an insurer's claims-handling conduct is ordinarily a question

25  of fact. *Amadeo v. Principal Mutual Life Insurance Co.* (9th Cir., 2002) 290 F.3d 1152, 1161.

26  USLI's state of mind, sole focus on avoiding coverage, lack of investigation, failure to

27  _____

28  [7]Motion, pgs. 11:18-12:13.

[8]Motion, pgs. 14:1-2.

Opposition to Motion to Dismiss/Motion for
More Definite Statement

1  obtain legal advice, refusal to negotiate settlement of Hedberg's claim, and the wrongful

2  withdrawal of its "courtesy" defense all involve factual issues that will be the subject of

3  discovery and which should be submitted to a trier of fact for an adjudication of the bad faith

4  issue based on the totality of the circumstances.

5          The covenant of good faith and fair dealing has both a subjective and an objective

6  aspect.  An insurer violates the covenant if it subjectively lacks belief in the validity of its

7  act, or if its conduct is objectively unreasonable.  *Bernstein, supra ,* 447 F.Supp.2d at 1114.

8  A determination regarding the presence or absence of good faith involves an inquiry into

9  motive, intent and state of mind.  Conclusions concerning such matters, in most cases, are

10  founded upon inferences.  *Id. at* 1454; *Bernstein, supra ,* 447 F.Supp.2d at 1113.  See *Shade*

11  *Foods v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, where the

12  court upheld a finding of bad faith, although it recognized that the record provided no more

13  than a modest degree of support for each of the inferences.  *Id.* at 909.  The court concluded,

14  however, that each inference drew strength from the others, and therefore the record as a

15  whole disclosed a reasonable basis for the jury's finding of bad faith.  *Id.*

16          To protect the insured's interests, it is essential that an insurer fully inquire into

17  possible bases that might support the insured's claim.  *Wilson v. 21st Century Insurance Co.*

18  (2007) 42 Cal.4th 713, 721.  The insurer may not just focus on those facts which justify

19  denial of the claim.  *Id.*  An insurer has a duty to protect the insured's interests as if it were

20  its own, and cannot reasonably and in good faith deny payments to its insured without

21  thoroughly investigating the foundation for its denial. *Egan v. Mutual of Omaha* (1979) 24

22  Cal.3d 809, 819.   If an insurer ignores evidence which supports coverage, it acts

23  unreasonably toward its insured and breaches the covenant of good faith and fair dealing.

24  *Mariscal v. Old Republic Life Insurance Co.* (1996) 42 Cal.App.4th 1617, 1624.

25  An insurer has a duty to diligently search for evidence which supports its insured's claim.  If

26  it seeks to discover only evidence that defeats the claim, it holds its own interest above that

27  of the insured.  *Bernstein, supra,* 447 F.Supp.2d at 1112.  An insurer can be liable for bad

28  faith for conducting an investigation that is unjustifiably superficial or perfunctory or that

1  looks only in one self-serving direction for evidence about the source, nature, or extent of the
2  claimed losses. *Id*. at 1112.

3      In *Jordan v. Allstate Insurance Co.* (2007) 148 Cal.App.4th 1062, the court
4  emphasized the Supreme Court's mandate that an insurer *fully* inquire into *possible* bases
5  that *might* support the insured's claim. The insurer owes a duty to investigate *all* of the
6  possible bases of an insured's claim. *Id*. at 1072, 1073. (Emphasis original).   The court held
7  that although Allstate's denial was based on a reasonable interpretation of its policy
8  provision, this did not excuse its failure to investigate other possible bases for the claim. *Id*.
9  at 1073.  The court reversed summary judgment in favor of the insurer on the grounds that
10 triable issues of fact, precluded summary disposition of the bad faith claim. *Id*. at 1066,
11 1075-1077.

12      An insurer cannot claim a genuine dispute regarding coverage in cases where it
13 failed to investigate, because by failing to investigate, it deprived itself of the ability to make
14 a fair evaluation of the claim. *Jordan, supra* at 1074.   An insurer is entitled to summary
15 judgment based on a genuine dispute over coverage only where the record demonstrates the
16 absence of triable issues as to whether the disputed position upon which the insurer denied
17 the claim was reached reasonably and in good faith. *Wilson, supra,* 42 Cal.4th at 724.  The
18 genuine dispute doctrine does not relieve an insurer from its obligation to thoroughly and
19 fairly investigate, process and evaluate the insured's claim. *Id.* at 723.

20      USLI has failed to provide any evidence that it obtained any legal advice before
21 denying coverage for Hedberg's claim.  "An insurer cannot escape bad faith liability by
22 adopting an interpretation of its policy grounded only in the subjective perceptions of its
23 unguided claims adjusters.  Arbitrary interpretation of insurance contracts is the antithesis of
24 the reasonable dealing required by the covenant of good faith". *Amadeo*, supra, 290 F.3d at
25 1163.

26      The reasonableness of an insurer's denial must be evaluated as of the time its denial
27 was made.  In *Mullen v. Glens Falls Ins. Co.* (1977) 73 Cal.App.3d 163, the court held than
28 an insurer may not deny a defense at a time when it has reason to believe there is potential

1  liability under the insurance policy, and then resort to subsequent factors to justify its denial.

2  *Id.* at 173. The court held that public policy mandated that an insurer be precluded from

3  doing so; otherwise an insurer could refuse to defend its insured on the slightest provocation

4  and then resort to hindsight for justification. *Id.*

5       In determining bad faith, the significance to the insured of the duty breached is

6  considered. *Campbell v. Superior Court* (1996) 44 Cal.App.4th 1308, 1319. The court

7  recognized that one of the prime benefits of a policy is the peace of mind and security that

8  comes from knowing that if the insured contingency arises, the insurer will defend against

9  the claim. *Id.* "The obligation of the insurer to defend is of vital importance to the insured".

10  *Amato v. Mercury Casualty Co.* (1997) 53 Cal.App.4th 825, 832. The insured's desire to

11  secure the right to call on the insurer's superior resources for the defense of the third party

12  claims is, in all likelihood, typically as significant a motive for the purchase of insurance as

13  is the wish to obtain indemnity for possible liability. As a consequence, California courts

14  have been consistently solicitous of insured's expectations on this score. *Montrose Chemical*

15  *Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295-296. In *Campbell*, the court recognized

16  that if an insurer faced no bad faith liability for its refusal to defend, it would provide strong

17  financial incentive encouraging the insured to refuse to defend, because even if the insurer

18  was later sued by its insured, it would be in no worse position that if it had assumed its

19  obligations. *Campbell, supra*, at 1320.

20       The duty to settle is of course no less critical than the duty to defend. The

21  obligation of good faith and fair dealing requires the insurer to settle in an appropriate case

22  although the express terms of the policy do not impose such a duty. *Comunale v. Traders &*

23  *General Ins. Co.* (1958) 50 Cal.2d 654, 658; *Silberg v. California Life Ins. Co.* (1974) 11

24  Cal.3d 452, 460. In *Kransco v. American Empire Surplus Lines Ins. Co.* (2000) 23 Cal.4th

25  390, 401, the Supreme Court reiterated that:

26       One of the most important benefits of a maximum limit insurance policy is the
         assurance that the company will provide the insured with defense and
27       indemnification for the purpose of protecting him from liability. Accordingly,
         the insured has the legitimate right to expect that the method of settlement
28       within policy limits will be employed in order to give him such protection.
         *Kransco, supra*.

Opposition to Motion to Dismiss/Motion for
More Definite Statement

15

1    The duty to accept reasonable settlements, which is included in the implied

2    covenant of good faith and fair dealing, would be meaningless if it did not entail a duty to

3    negotiate toward a reasonable settlement. *Shade Foods*, *supra* at 906. In *Shade Foods*, the

4    court found an insurer liable for bad faith, where it closed its file, declined to take any

5    initiative in pursuing settlement negotiations, and chose instead to adopt a no-payment

6    position from which it did not waiver. *Id.* at 883. Bad faith failure to settle need not be

7    based on dishonesty, fraud or concealment, but may be based on an unwarranted refusal to

8    meet the duty to accept reasonable settlements. *Miller v. Elite Ins. Co.* (1980) 100

9    Cal.App.3d 739, 759.

10   An insurer owes a continuing duty of good faith and fair dealing, and the fact that

11   coverage litigation has commenced does not excuse an insurer from the continuing

12   responsibility to fully investigate the insured's claim. *Jordan v. Allstate, supra,* 148

13   Cal.App.4th at 1076 fn. 7. An insurer who "looks the other way" when confronted with

14   facts revealing the possibility of coverage is subject to bad faith liability.

15   **IV. <u>Salinas Golf Has Sufficiently Pled Punitive Damages</u>**

16   USLI improperly argues state pleading standards. *Clark v. Allstate Insurance*

17   *Company* (S.D.Cal., 2000) 106 F.Supp.2d 1016 is precisely on point and demonstrates the

18   frivolity of USLI's motion for a more definite statement. In *Clark v. Allstate*, the insurer

19   moved to strike the punitive damages allegations, contending that the conclusory allegations

20   and facts were inadequate to establish entitlement to punitive damages. *Id.* at 1018. The

21   court determined that California's heightened pleading standard irreconcilably conflicted

22   with the federal pleading standard, and that the federal standard controls. *Id.* at 1018. Under

23   federal law, malice, intent and knowledge and other conditions of mind may be averred

24   generally. *Id.* at 1018-1019. "In federal court, a plaintiff may include a 'short and plain'

25   prayer for punitive damages that relies entirely on unsupported and conclusory averments of

26   malice or fraudulent intent". *Id.* at 1019. Conclusory assertions that a defendant acted

27   intentionally or with conscious disregard are adequate to plead the mental state required for

28   punitive damages. *Id.* at 1019. "Oppression, fraud or malice" may be averred generally. *Id.*

1    The court held that the complaint complied with the federal rules by alleging that Allstate

2    intentionally denied plaintiff's claim despite knowledge of its coverage obligations, and that

3    it acted with an intent to injure plaintiff. *Id.* at 1020.

4        Salinas Golf's Counterclaim itemizes instances of USLI's tortious conduct (¶28 (d-

5    h)), and alleges:

6            Counterdefendants' conduct alleged herein was done with fraud, malice,
             and oppression as defined by Civil Code §3294 in that the conduct was
7            intended to annoy, harass, and injure SALINAS GOLF, and was carried
             out with a willful, conscious and reckless disregard of SALINAS GOLF'S
8            rights and the impact such conduct would have upon SALINAS GOLF.
             (Counterclaim ¶30).
9

10       As confirmed in *Clark v. Allstate, supra*, this allegation sufficiently pleads punitive

11   damages.

12       Furthermore, it is well established that a motion for a more definite statement

13   attacks unintelligibility in a pleading, not mere lack of detail. *Doe and Roe v. Hagee* (N.D.

14   Cal., 2007) 473 F.Supp.2d 989, 994.  A motion for a more definite statement should be

15   granted only where the complaint is so indefinite that defendant cannot ascertain the nature

16   of the claim being asserted and therefore cannot reasonably be expected to frame an

17   appropriate response. *Id.*  The court must deny the motion if the complaint is specific

18   enough to apprise defendant of the substance of the claim being asserted. *Id.*  If the detail

19   sought by a motion for more definite statement is obtainable through discovery, the motion

20   should be denied. *Id.*  Clearly USLI is aware that punitive damages are being sought against

21   it, and any further details regarding the basis for this claim can be obtained by discovery.

                        **V.  Leave to Amend**
22

23       A district court should grant leave to amend even if no request to amend the

24   pleading was made, unless it determines that the pleading could not possibly be cured by the

25   allegation of other facts. *Lopez v. Smith* (9th Cir., 2000) 203 F.3d.1122, 1128.  If for any

26   reason this Court decides to sustain USLI's motions, Salinas Golf requests leave to amend.

27

28

1

## <u>CONCLUSION</u>

2      USLI has failed to meet its burden on its motions.  USLI cannot obtain dismissal by

3  a calculated failure to address the key issue, policy provisions and case law.  USLI has

4  attempted to apply state pleading standards, and has disregarded the federal precedent

5  precisely on point which confirms the frivolity of its motion for a more definite statement.

6  Salinas Golf therefore respectfully requests that this Court deny USLI's motions.

7

8  DATED: September 5, 2008                    WILLOUGHBY, STUART & BENING

9

10                                            By: _Ellyn Nesbit_____

11                                                ELLYN E. NESBIT
                                                  Attorneys for
12                                                Salinas Golf and Country Club, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28