1677.10859W

1  RANDALL E. WILLOUGHBY - 43177
       REW@wsblaw.net
2  ELLYN E.  NESBIT - 136398
       EEN@wsblaw.net
3  WILLOUGHBY, STUART & BENING, INC.
   50 W. San Fernando St., Suite 400
4  San Jose, California 95113
   (408) 289-1972
5  Facsimile: (408) 295-6375

6  Attorneys for Defendant
   Salinas Golf and Country Club, Inc.

7

## IN THE UNITED STATES DISTRICT COURT

8

## NORTHERN DISTRICT OF CALIFORNIA

9

### SAN JOSE DIVISION

10

| | |
|---|---|
| 11 PHILADELPHIA INDEMNITY<br>   INSURANCE COMPANY, a<br>12 Pennsylvania corporation,<br><br>13          Plaintiff,<br>14 vs.<br>15 SALINAS GOLF and COUNTRY<br>16 CLUB, Inc., a California corporation<br>   and RUSSELL BAAR, an individual<br>17<br>          Defendants.<br>18<br>_____<br>19 SALINAS GOLF and COUNTRY<br>20 CLUB, Inc., a California corporation<br>21<br>          Counterclaimant,<br>22 vs.<br>23 PHILADELPHIA INDEMNITY<br>24 INSURANCE COMPANY, a<br>   Pennsylvania corporation; and<br>25 UNITED STATES LIABILITY<br>   INSURANCE COMPANY, a<br>26 Pennsylvania corporation,<br>27<br>          Counterdefendants.<br>28 _____ | No.  C08 01773 JF<br><br>**SALINAS GOLF and COUNTRY<br>CLUB INC.'s  REQUEST FOR<br>JUDICIAL NOTICE IN SUPPORT OF<br>OPPOSITION to<br>Motion by United States Liability<br>Insurance Company for Dismissal of<br>Counterclaim, and in the Alternative,<br>Motion for a More Definite Statement<br>(FRCP Rules 12(b)(6) & 12(e).**<br><br><br>**Date:   September 26, 2008<br>Time:   9:00 a.m.<br>Courtroom:   3** |

Request for Judicial Notice in Support of
Opposition to Motion to Dismiss/Motion for
More Definite Statement

1

1      Defendant/Counterclaimant Salinas Golf and Country Club, Inc. requests that this

2 Court take judicial notice of the following documents

3      1.   Philadelphia Indemnity's Complaint filed in this action against Salinas Golf

4 (without Philadelphia's policy exhibit);

5      2.   The Amended Complaint filed in the underlying action, Monterey Superior Court

6 Case No. M77015.

7      Pursuant to Federal Rule of Evidence 201, a court may take judicial notice of court

8 records. *Copple .v Astrella & Rice* (2006) 442 F.Supp.2d 829, 834.

9      On a motion to dismiss under F.R.C.P. Rule 12(b)(6), the court may consider

10 materials that are submitted as part of the complaint, and may consider matters that are

11 subject to judicial notice. *Lee v. City of Los Angeles, supra* at 688-689.

12

13 DATED: September 5, 2008          WILLOUGHBY, STUART & BENING

14

15            By: _____

16              ELLYN E. NESBIT
             Attorneys for

17              Salinas Golf and Country Club, Inc.

18

19

20

21

22

23

24

25

26

27

28

Request for Judicial Notice in Support of
Opposition to Motion to Dismiss/Motion for
More Definite Statement      2

ORIGINAL

1   SEDGWICK, DETERT, MORAN & ARNOLD LLP    FILED  Fee Paid
    BRIAN D. HARRISON  Bar No. 157123                        $1
2   One Market Plaza
    Steuart Tower, 8th Floor                      2008 APR -2 P 3:34
3   San Francisco, California 94105
    Telephone: (415) 781-7900
4   Facsimile: (415) 781-2635                  RICHARD W. WIEKING
    Email: brian.harrison@sdma.com             U.S. DISTRICT COURT
5                                              NO. DIST. OF CA. S.J.
6   Attorneys for Plaintiff
    PHILADELPHIA INDEMNITY INSURANCE COMPANY    E-FILING
7
8
9                    UNITED STATES DISTRICT COURT
10                 NORTHERN DISTRICT OF CALIFORNIA
                        SAN JOSE DIVISION                    HRL
11
12  PHILADELPHIA INDEMNITY          CASE NO.  C08  01773
    INSURANCE COMPANY, a
13  Pennsylvania corporation,       COMPLAINT FOR DECLARATORY
                                    RELIEF
14            Plaintiff,
                                    [JURY DEMAND INDORSED
15       v.                         HEREIN; Fed. R.Civ.P. 38]
16  SALINAS GOLF and COUNTRY
    CLUB, Inc., a California corporation
17  and RUSSELL BAAR, an individual
18            Defendants.
19
20       NOW COMES plaintiff Philadelphia Indemnity Insurance Company

21  ("Philadelphia") and, for its complaint against defendants Salinas Golf and

22  Country Club, Inc. ("Club") and Russell Baar, D.C. ("Baar") alleges as follows:

23                    JURISDICTION AND VENUE

24       1.    Jurisdiction of this action is founded upon 28 U.S.C. § 1332, as the

25  parties are citizens of different states and the amount in controversy exceeds the

26  sum of $75,000, exclusive of interest and costs.

27       2.    Venue is proper in the Northern District of California pursuant to 28

28  U.S.C. §§ 1391(a) and (c) in that the defendants are subject to personal

SF/1493004v1                        -1-                      CASE NO.
                    COMPLAINT FOR DECLARATORY RELIEF    EXHIBIT 1

1   jurisdiction in this district at the time the action is commenced, the insurance

2   policy at issue was entered into in this district, and a substantial part of the events

3   or omissions giving rise to the claim occurred in this district.

4                                   PARTIES

5          3.     Philadelphia is a corporation organized and incorporated under the

6   laws of the State of Pennsylvania with its principal place of business in Bala

7   Cynwyd, Pennsylvania.  At pertinent times, Philadelphia has conducted business

8   in this district.

9          4.     At all times herein relevant, defendant Club was and is a corporation

10  duly organized and incorporated under the laws of the State of California, with its

11  principal place of business in the County of Monterey.  At all times herein

12  relevant, a substantial part of the events or omissions giving rise to the claim

13  occurred in this district.

14         5.     On information and belief, Baar is an individual who is a citizen and

15  resident of the State of California, County of Monterey.

16                          PRELIMINARY ALLEGATIONS

17         6.     Philadelphia issued Flexi Plus Five Policy No. PHSD165265 to the

18  Club for the policy period of November 26, 2005 to November 26, 2006 ("the

19  Policy").  The Policy provides coverage pursuant to all the terms, conditions,

20  limitations, exclusions, and endorsements contained therein.  A true and correct

21  copy of the Policy is attached hereto as Exhibit A.

22         7.     From November 26, 2004 to November 26, 2005, the Club was

23  insured by United States Liability Insurance Company ("USLI").

24         8.     The Club and Barr are defendants in an action entitled *Christina Pitre*

25  *and Robert Hedberg v. Salinas Golf and Country Club, Inc., Russell Baar, D.C.,*

26  *and Does 1 through 100, inclusive,* Case No. M77015, in the Superior Court of

27  California, in and for the County of Monterey ("the Action").

28

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

9.    On October 25, 2005, Christina Pitre ("Pitre") made a written demand to the Club within the policy period of the USLI policy.  The demand letter enclosed a draft complaint on behalf of Pitre ("Draft Complaint") and stated that Pitre's Department of Fair Employment and Housing ("DFEH") complaint (and request for right-to-sue letter) would be filed the next week and that the complaint would be filed immediately upon the issuance of the right-to-sue letter.

10.    The Draft Complaint includes the following allegations:

> In early 2004, Pitre began an affair with defendant Russell Baar, a member of the Club.  In October 2004, Robert Hedberg became concerned after Baar was elected to the Club's board of directors that Baar's involvement with a Club employee (Pitre) could become problematic, and warned the Club's management that the situation was a potential liability.

> Pitre ended her affair with Baar in February of 2005, but Barr allegedly continued to: send Pitre text messages on her cell phone; approach her at work and ask why she did not return his messages; and come to the street where her apartment was located to see when Pitre came and went.

> Hedberg's employment at the Club ended while he was on medical leave in March 2005.  A motivating factor for the Club's decision to end Hedberg's employment was Hedberg's support of Pitre's efforts to enjoy a harassment-free work environment, as well as Hedberg's refusal to fire Pitre, and thereby avoid the liability about which Hedberg had warned Club management.

> On July 8, 2005, the Club fired Pitre for the (allegedly pretextual) reason that she was frequently late for work.

11.    The Draft Complaint advanced the following causes of action: (1) wrongful discharge in violation of public policy, against the Club; (2) hostile work environment, against the Club and Baar; (3) failure to take reasonable steps to prevent harassment from occurring, against the Club; (4) wrongful discharge in

SEDGWICK
TERT, MORAN & ARNOLD LLP

1   violation of state statute, against the Club; and (5) violation of unfair competition

2   law, against the Club and Baar.

3       12.   On information and belief, the matter was tendered to USLI and USLI

4   assumed the Club's defense on October 31, 2005.  Pitre filed the original

5   complaint against the Club and Baar on November 29, 2005.  On information and

6   belief, the original complaint was never served.  In an email dated January 6,

7   2006, from Pitre's counsel to the Club's counsel, Pitre's counsel advised that he

8   had also been retained by Hedberg to prosecute a wrongful discharge action on

9   Hedberg's behalf.  Accordingly, plaintiffs' counsel intended to file a DFEH

10   complaint on behalf of Hedberg, and thereafter would file an amended complaint

11   ("Amended Complaint") on behalf of both Pitre and Hedberg.  The Amended

12   Complaint was filed on January 20, 2006.

13       13.   The Amended Complaint includes the allegations made by Pitre in the

14   Draft Complaint, as well as details the circumstances under which Hedberg was

15   allegedly forced to resign.  The Amended Complaint (like the Draft Complaint)

16   alleges that a "motivating factor" for the Club's ending of Hedberg's employment

17   was Hedberg's support of "Pitre's efforts to enjoy a harassment—free work

18   environment, and because he had refused to fire [Pitre] so that Club could be rid of

19   her and avoid the liability about which Hedberg had warned" the Club's

20   management.

21       14.   The Amended Complaint advances the following causes of action: (1)

22   wrongful discharge in violation of public policy, against the Club; (2) wrongful

23   discharge in violation of state statute, against the Club; (3) hostile work

24   environment, against the Club and Baar; (4) failure to take reasonable steps to

25   prevent harassment from occurring, against the Club; (5) intentional infliction of

26   emotional distress, against the Club and Baar; and (6) violation of unfair

27   competition law, against the Club and Baar.

28

SEDGWICK

15. The Club tendered the Amended Complaint to USLI. On information and belief, USLI agreed to provide a defense to the Amended Complaint.

16. The Amended Complaint and the Action was tendered to Philadelphia. On May 9, 2006, Philadelphia declined coverage for the Action and the Amended Complaint based on the Prior and Pending Exclusion (the Prior and Pending Exclusion is cited in paragraph 26 below) and because Philadelphia determined that the Action was related to Pitre's October 25, 2005 written demand made against the Club prior to the inception date of Philadelphia's policy period (the Interrelated Wrongful Act provision is cited in paragraph 22 below).

17. Philadelphia did not receive any response from the Club until January 17, 2008, when the Club demanded that Philadelphia assume the defense of and agree to indemnify it in the Action. Pitre and the Club settled her allegations of wrongful discharge for $110,000 and USLI withdrew from the defense. Hedberg is the only plaintiff remaining in the Action.

18. On or around February 26, 2008, Philadelphia accepted the defense of the Club and Barr, and reserved its rights to recoup all Loss, including Defense Costs, paid by Philadelphia on account of the Action.

## FIRST CAUSE ACTION

(Declaratory Judgment That No Duty To Defend Or To Indemnify)

19. For its first cause of action, Philadelphia incorporates herein by reference, as it fully restated, paragraphs 1 to 18 above.

20. "Claim" is defined under B. at Part 6 of the Policy, entitled Common Policy Definitions, as:

    1. any written demand for monetary or non-monetary relief;

    2. any judicial, civil, administrative, regulatory or arbitration proceeding (including any appeal therefrom) which subjects an **Insured** to a binding adjudication of liability for monetary or non-monetary relief for a **Wrongful Act**; or

    3. any written request to toll or waive any statute of limitations applicable to any actual or potential suit or causes of action against an **Insured**.

21. The Policy's Declarations provide that . . . "this policy is written on a claims made basis and covers only those claims first made during the policy period. . . ."

22. Coverage is excluded under C. of IV., entitled Notice/Claim Reporting Provisions at Part 8 of the Policy, entitled Common Policy Conditions, which provides:

> All **Loss** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts**, or the same related **Workplace Violence Acts**, shall be deemed one **Loss** on account of a [sic] one **Claim** or one **Workplace Violence Act**. Such **Claim** or **Workplace Violence Act** shall be deemed to be first made or to have first occurred when the earliest of such **Claims** or **Workplace Violence Acts** were first made or first occurred.

"Interrelated Wrongful Act" is defined under H. at Part 6 of the Policy to mean: "any causally connected Wrongful Act or any series of the same, similar or related Wrongful Acts."

23. The October 25, 2005 correspondence from Pitre's attorney and the Draft Complaint fall within the Policy's definition of "Claim." The Amended Complaint (filed January 20, 2006), which also seeks recovery on behalf of Hedberg, also falls within the definition of "Claim" and the Amended Complaint was filed within the policy period of the Policy.

24. The claims by Pitre were first made prior to November 26, 2005, and, on information and belief, USLI defended those claims. With respect to the Amended Complaint pertaining to Hedberg, as the allegations are Interrelated Wrongful Acts, the Claim as represented by the Amended Complaint is deemed, per operation of Part 8, IV. C, quoted above in paragraph 22, to have been made when the first Claim was made, which was on October 25, 2005, prior to the inception of the Policy.

25. For the reasons outlined above, Philadelphia contends that it has no duty to defend or to indemnify the Club and Baar in the Action.

26.     Coverage is also excluded by operation of Exclusion F at Part 7.F. of the Policy, entitled Common Policy Exclusions, which provides:

> The **Underwriter** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against the **Insured**:
>
> arising out of, based upon or attributable to:
>
> 1.     any litigation or demand against an **Insured** pending on or before the respective Prior and Pending Date set forth in Item 5 of the Declarations Page [11/26/2005], or the same or essentially the same facts as alleged in such prior litigation; or
>
> 2.     any **Wrongful Act**, fact, circumstance or situation which has been the subject of any written notice given under any other policy of insurance prior to inception of this Policy; or
>
> 3.     any **Wrongful Act**, fact, circumstance or situation of which, as of the respective Prior and Pending Date set forth in Item 5 of the Declarations Page, the **Insured** had knowledge and from which the **Insured** could reasonable expect a **Claim** to arise.

27.     In both the Draft Complaint and the Amended Complaint, the wrongful acts, facts and circumstances at issue – the alleged discharge of both Pitre and Hedberg, which focus on alleged harassment and hostile work environment at the Club – arise from the same or Interrelated Wrongful Acts.  The allegations of the sexual harassment of Pitre, Hedberg's warning to Club management with respect to the potential liability to the Club arising from Baar's conduct, and Hedberg's support of "Pitre's efforts to enjoy a harassment-free work environment," are central themes of both the Draft Complaint and the Amended Complaint.  Therefore, Hedberg's claims in the Amended Complaint are interrelated with Pitre's claims made in the Draft Complaint.

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

SF/1493004v1

-7-
COMPLAINT FOR DECLARATORY RELIEF

CASE NO.

1    28.    Written notice of these wrongful acts, facts and circumstances was

2    given to USLI in connection with the Club's tender of defense of the claim first

3    made by Pitre on October 25, 2005. Because the allegations in the Amended

4    Complaint "arise out of, are based upon, or are attributable to" the allegations in

5    the October 25, 2005 correspondence and the Draft Complaint, Exclusions F.1.

6    and F.2. apply.

7    29.    For the reasons outlined above, Philadelphia contends that it has no

8    duty to defend or to indemnify the Club and Baar in the Action.

9    30.    An actual controversy has arisen and now exists between Philadelphia

10   and the Club concerning their respective rights and duties under the Policy and

11   that Philadelphia contends that it has no duty to defend or to indemnify the Club

12   and Baar in the Action. On information and belief, the Club contends that

13   Philadelphia has a duty to defend and to indemnify the Club and Baar in the

14   Action.

15   31.    Philadelphia desires a judicial determination of its rights and duties, if

16   any, and a declaration that it has no duty to defend or to indemnify the Club and

17   Baar under the Policy in the Action.

18   32.    A judicial determination is necessary and appropriate at this time

19   under the circumstances in order that the parties may ascertain their rights and

20   duties as forementioned. Such controversy is incapable of resolution without

21   judicial adjudication. Accordingly, Philadelphia has no plain or speedy or

22   adequate remedy at law, and request a declaratory judgment, adjudicating and

23   declaring that Philadelphia has no duty to defend or to indemnify the Club in the

24   Action.

25                      SECOND CAUSE OF ACTION

26           (Reimbursement of Defense Fees and Costs and Indemnity)

27   33.    For its second cause of action, Philadelphia incorporates herein by

28   reference, as it fully restated, paragraphs 1 to 32 above.

SEDGWICK
DETERT, MORAN & ARNOLD LLP

34. In light of the fact that all of the costs and fees incurred in the defense of the Club and Baar in the Action and any indemnity which may be paid in connection with a resolution of the Action are not the responsibility of Philadelphia inasmuch there is no coverage for the Action and/or any such coverage is excluded, Philadelphia is entitled to a full and complete reimbursement of all such fees, costs, and indemnity incurred or to be incurred in connection with the Action.

35. Philadelphia is entitled to recover damages from Club in a sum which will be provided at trial.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, plaintiff Philadelphia Indemnity Insurance Company prays for relief as follows:

1. For a judgment that, by reason of the terms, conditions, and exclusions in the Policy, no duty to defend or to indemnify is owed to the Club and Baar in connection with the Action;

2. For a judgment that Philadelphia is entitled to restitution and reimbursement from the Club for any and all sums expended in defense or settlement of the Action;

3. On all causes of action, for interest, including prejudgment interest;

4. On all causes of action, for costs herein and;

5. For such other and further relief as the court deems to be just and proper.

DATED: April 1, 2008        SEDGWICK, DETERT, MORAN & ARNOLD LLP


By: _____
    BRIAN D. HARRISON
    Attorneys for Plaintiff
    PHILADELPHIA INDEMNITY INSURANCE
    COMPANY

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1                     <u>DEMAND FOR JURY TRIAL</u>

2           Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff

3 Philadelphia Indemnity Insurance Company hereby demands a jury trial for this

4 action.

5

6 DATED: April 1, 2008        SEDGWICK, DETERT, MORAN & ARNOLD LLP

7

8                            By: _____

9                              BRIAN D. HARRISON
                             Attorneys for Plaintiff

10                             PHILADELPHIA INDEMNITY INSURANCE
                            COMPANY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                -10-
                COMPLAINT FOR DECLARATORY RELIEF            CASE NO.

John Elson SBN 92620
17723 Northwood Place
Prunedale, Ca. 93907
831-663-6873
j_h_elson@yahoo.com



JAN 2 0 2008

Attorneys for Plaintiff
Christina Pitre

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF MONTEREY**

| | |
|---|---|
| CHRISTINA PITRE, an individual, for herself and on behalf of the general public; ROBERT HEDBERG, an individual, for himself and on behalf of the general public; | Case No.: M77015 |
| | **FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF:** |
| Plaintiffs, | **(1) WRONGFUL DISCHARGE IN VIOLATION OF FUNDAMENTAL PUBLIC POLICY;** |
| v. | |
| SALINAS GOLF AND COUNTRY CLUB, INC., a California Corporation; RUSSELL BAAR, D.C., an individual, and DOES 1 through 100, inclusive, | **(2) WRONGFUL DISCHARGE IN VIOLATION OF FEHA (Gov't Code § 12940 et seq)** |
| Defendants. | **(3) HOSTILE WORK ENVIRONMENT IN VIOLATION OF FEHA (Gov't Code § 12940 et seq)** |
| | **(4) FAILURE TO TAKE ALL REASONABLE STEPS TO PREVENT HARASSMENT FROM OCCURRING IN VIOLATION OF FEHA (Gov't Code § 12940 et seq)** |
| | **(5) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** |
| | **(6) VIOLATION OF UNFAIR COMPETITION LAW (Business & Professions Code § 17200)** |

[COMMON ALLEGATIONS]

1.    At all time herein relevant plaintiffs Christina Pitre and Robert Hedberg resided in the

1

EXHIBIT 2

County of Monterey, State of California.

2.    At all time herein relevant, defendant Salinas Golf and Country Club, Inc. ("Club"), was and is, a corporation duly organized and existing under the laws of the State of California. with its principal place of business in the County of Monterey.  At all times herein relevant, the Club's principal business activity was and is the operation of a private facility at which its member could play golf, engage in other sporting activities, and enjoy meals and various beverages, including but not limited to alcoholic beverages in a bar operated by he Club.

3.    At all times herein relevant Russell Baar, D.C., was and is a member of he Club, and in early to mid October of 2004 Baar was also elected to the Club's Board of Directors, with his term of service to begin in January of 2005.

4.    Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1-100, inclusive and therefore sues these defendants by such fictitious names.  Plaintiffs will amend this complaint to allege the true names and capacities of the Doe defendants when ascertained.  Plaintiffs are informed and believe that said Doe defendants were in some way responsible for the wrongful acts herein alleged.

5.    Plaintiffs are informed and believes that at all times herein mentioned each defendant, including each defendant designated herein as a DOE, was and is the agent, employee, subsidiary, partner, member, associate, co-conspirator, and/or representative of each other defendant. including each DOE defendant, and all of the things alleged to have been done by these defendants were done in the course and scope of the agency, employment, subsidiary relationship, partnership, membership, association, conspiracy, or representative relationship and with the knowledge and consent of their respective principals, employers, parent corporations, partners, members, associates. co-conspirators or representatives.

6.    In May of 1997 plaintiff Robert Hedberg was hired to be Club's General Manager pursuant to a written contract.  Hedberg's duties as General Manager would be to oversee all of the operations of the Club, including but not limited to a golf course, a bar and restaurant, all of which were owned and operated by the Club for the benefit and enjoyment of Club's members.  The contract provided that Hedberg would be a salaried employee and that if Club intended to terminate

2

Hedberg's employment Club would have to give at least 30 days written notice of its intention to do so.

7.    During Hedberg's employment he performed the duties required of him satisfactorily, and in so doing earned the respect, trust and admiration of Club's Board of Directors and its Presidents, and Club's employees and members.

8.    In October of 2002 plaintiff Christina Pitre was hired by the Club to work as a bartender.

9.    Shortly after plaintiff Pitre's arrival, she began to receive a barrage of various sexually related comments, and to endure male members gawking and staring at her anatomy, and commenting upon same.

10.    This conduct included, but was not limited to, Club members Ted W., Dave W. and George V. individually either speaking inappropriately to plaintiff concerning their desires to engage in sexual behavior with her, or touching her without her having asked or invited them to do so, and also their attempts to kiss her while suggesting that she engage in sexual conduct.

11.    This conduct became so oppressive and pervasive that it altered the terms and conditions of plaintiff's employment, and in 2004 she complained to her supervisor, plaintiff Hedberg, about the conduct of these members, and upon learning of plaintiff Pitre's discomfort with this conduct plaintiff Hedberg conferred with other members of Club senior management, including but not limited to Dean G., with the result that in May of 2004 Club sent letters to Ted W., Dave W. and George V. advising each to stop the conduct directed to plaintiff or their membership privileges would be suspended.

12.    In early 2004 defendant Baar began suggesting that plaintiff Pitre engage in a sexual relationship with him, which plaintiff initially resisted, though in May of 2004 plaintiff began an affair with defendant Baar at his urging.

13.    Due to Baar's behavior toward plaintiff at the workplace it became obvious to those present when he interacted with plaintiff that he was involved with her, and upon observing the situation, plaintiff Hedberg became concerned after defendant Baar was elected to the Club's Board of Directors in October of 2004 that Baar's involvement with a Club employee could become problematic, and therefor plaintiff Hedberg warned Dean G. in October of 2004 that the situation

3

was a potential liability for The Club as it posed the risk that Baar would attempt to use his membership and stature at The Club to exert pressure upon plaintiff to continue their sexual relationship.

14.    In either late 2004 or early 2005 plaintiff Pitre was tardy in reporting to work, and plaintiff Hedberg therefor counseled her and warned her if her punctuality did not improve her employment with Club would be jeopardized. Immediately thereafter, plaintiff Pitre's punctuality improved and her supervisor, plaintiff Hedberg, was satisfied with plaintiff's punctuality, attendance and job performance. Notwithstanding plaintiff Pitre having remedied her failings in punctuality in reporting for work, Dean G. told her supervisor, plaintiff Hedberg, that she should be fired, but plaintiff Hedberg refused to do so and advised Dean G. that plaintiff Pitre had remedied her punctuality failings and there was therefor no reason to fire her as she otherwise performed her duties as a bartender satisfactorily.

15.    In January of 2005 defendant Baar began to serve upon The Club's Board of Directors, and despite some members of Club's Board of Directors being aware of his sexual relationship with plaintiff none of Club's members of the Board of Directors in any way remonstrated with, or attempted to counsel, Baar on his behavior towards plaintiff Pitre.

16.    Upon his ascension to the Board of Directors Baar said to plaintiff Pitre "*I own you now, baby*", and "*Now that I'm on the board I can help you keep your job, or lose it, you know?*", implying that due to his position with The Club he was in a position to affect the terms and conditions of her employment if she were not compliant with his demands for sexual favors.

17.    In January of 2005 Jerry T. began to serve as president of The Club's Board of Directors, replacing Bill L.

18.    In January of 2005 Board of Directors member Mike J. touched plaintiff Pitre inappropriately and asked "*I won't be getting a letter from the Board about this, will I?*".

19.    In response to Mike J.'s behavior plaintiff Pitre complained to Club's new president, Jerry T., who shrugged off the conduct of Mike J. and dismissed plaintiff Pitre's concerns regarding the continued presence of a hostile work environment, and plaintiff Pitre's additionally expressed concern that a member of Club's Board of Directors would behave towards her as Mike J. had, and

4

that he had done so as if he could act with impunity.

20. In February of 2005 plaintiff Pitre broke off her affair with defendant Baar, and in response he continued to send her various text messages on her cell phone, approach her at work and ask why she did not return his messages, and to come to the street where her apartment was and sit in his car to see when plaintiff Pitre came and went.

21. On or about March 22, 2005 plaintiff Hedberg began a medical leave during which he planned to have back surgery, and up to that time Club had not voiced any concerns over his job performance or in any way advised him that his employment with Club was in any jeopardy.

22. On April 1, 2005, while plaintiff Hedberg was still on medical leave recuperating from back surgery, Board of Directors member Dean G. and Club President Jerry T. came to plaintiff Hedberg's home and informed him that if didn't resign Club would give him 30 days notice of intention to terminate his employment as was called for by plaintiff Hedberg's employment contract. When plaintiff Hedberg asked why he was to be terminated Dean G. gave plaintiff Hedberg a laundry list of purported failings and alleged errors in judgment by Hedberg, one of which was Hedberg's refusal to fire plaintiff Pitre, even though she had remedied the failing for which she had been counseled.

23. During the April 1, 2005 encounter plaintiff Hedberg asked repeatedly to be allowed to face Club's Board of Directors to refute the purported failings recited by Dean G. as the reasons for Club's decision to fire Hedberg, but Dean G. replied that the decision had been made and was not subject to negotiation, and that both Dean G. And Jerry T. required Hedberg to make a decision right then and there whether he would resign in lieu of being given notice by Club that his employment was being terminated, but that a resignation would look better for his employment history than a termination. Feeling he had no choice, plaintiff Hedberg resigned as Club's General Manager on April 1, 2005.

24. Plaintiff Hedberg is informed and believes, and thereon alleges, that a motivating factor for Club to have decided to end his employment as General Manager was because he had supported plaintiff Pitre's efforts to enjoy a harassment-free work environment, and because he had refused to fire plaintiff so that the Club could be rid of her and avoid the liability about which Hedberg had

5

warned Dean G. in October of 2004.

25.  After resigning, plaintiff Hedberg returned to Club and while on its premises shortly after April 1, 2005, Robert H. advised new Club President Jerry T. of (a) the potential liability posed by Baar's behavior towards plaintiff Pitre, and (b) that plaintiff Hedberg had earlier advised Dean G. of this potential liability.

26.  Due to Baar stalking plaintiff Pitre as aforesaid, in April of 2005 she moved to a new apartment, and when Baar learned she was no longer at her previous apartment he approached her at work and demanded to know the address to which she had moved.  Plaintiff Pitre refused to tell Baar of her new address, and so he continued to bombard her cell phone with text messages and to approach her at work importuning her to resume an affair with him.

27.  Plaintiff Pitre was afraid to complain to the interim general manager who had replaced plaintiff Hedberg of Baar's attentions due to the interim general manager being on the Board of Directors with Baar, and because he was also a friend of Baar's.

28.  Due to Baar's continued advances and importunings of plaintiff Pitre she began to suffer from emotional distress, worry, anxiety, and considered leaving her job but due to the need to support her family financially she could not do so.

29.  On July 8, 2005, Club fired plaintiff Pitre for the reason that she was late.  This was a pretextual reason because plaintiff had called in to ask if the bartender on the day shift could stay over for 30 minutes so that plaintiff could attend to a problem with her car, and the bartender on the day shift had advised it was no problem staying over on July 8th as plaintiff had worked that bartender's entire shift the previous day when plaintiff had been scheduled to be off.

30.  As a result of the wrongs complained of herein, and the loss of each of their employment as aforesaid, plaintiffs Pitre and Hedberg were caused to suffer great emotional distress, anger, and anxiety, all to their general damage in an amount exceeding the jurisdictional minimum of this court which will be proven at trial.

31.  As a further result of the wrongs complained of herein, and the loss of their employment as aforesaid, plaintiffs Pitre and Hedberg were caused to suffer a loss of earnings and benefits, all to their special damage in an amount to be proven at trial.

6

**[COME NOW PLAINTIFFS PITRE AND HEDBERG TO ALLEGE FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT SALINAS GOLF AND COUNTRY CLUB, INC.:  WRONGFUL DISCHARGE IN VIOLATION OF FUNDAMENTAL PUBLIC POLICY]**

32.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 31, inclusive, as though set forth in full.

33.    At all times herein relevant it was the fundamental public policy of the state of California that an employee be allowed to complain of a work environment that was hostile due to the presence of sexual harassment, that an employee be allowed voice to his or her employer complaints of misbehavior by supervisors and managers that constituted sexual harassment without suffering retaliation and/or reprisal for having done so, and that a co-employee be allowed voice to his or her employer complaints of misbehavior by co-employees, the employer's managers, or members of the employer's Board of Directors, that constituted sexual harassment without suffering retaliation and/or reprisal for having done so.

34.    In pretextually discharging plaintiffs Pitre and Hedberg as it did, defendant Club violated the fundamental public policy of the State of California, causing each plaintiff to suffer the damages as previously alleged.

35.    In acting as it did, defendant Club acted so wantonly, maliciously, oppressively, despicably, and with such a callous disregard of the known rights of each plaintiff, so as to entitle each to recover from said defendant punitive damages in an amount to be fixed by the jury.

**[COME NOW PLAINTIFFS PITRE AND HEDBERG TO ALLEGE FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT SALINAS GOLF AND COUNTRY CLUB, INC.: WRONGFUL DISCHARGE (*Gov't Code* §12940 et seq)]**

36    Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 31, and 33, inclusive, as though set forth in full.

37.    Plaintiff Pitre is informed an believes, and thereon alleges, that a motivating factor in the decision to terminate her employment was to retaliate against her for having made complaints of sexual harassment previously, and also to prevent her from doing so in light of Board of Directors

member Baar's unwelcome attentions, and defendant Club's knowledge of that unwelcome attention, and thereby violating *Government Code* §12940.

38.   Plaintiff Hedberg is informed an believes, and thereon alleges, that a motivating factor in the decision to terminate his employment was to retaliate against him for having supported plaintiff Pitre's efforts to enjoy a harassment free work environment, and for his warnings to Club's presidents and Dean G. of the liability posed by Club Board of Directors member Baar's interest in plaintiff Pitre, thereby violating *Government Code* §12940.

39.   As a result of the wrongful conduct of defendants, and each of them, plaintiffs have been caused to suffer the damages as previously alleged in this complaint.

40.   In acting as it did, defendant Club acted so wantonly, maliciously, oppressively, despicably, and with such a callous disregard of the known rights of plaintiff, so as to entitle her to recover from said defendant punitive damages in amounts to be fixed by the jury.

41.   On or about December 14, 2005 Plaintiff Pitre filed a complaint of wrongful discharge, harassment and retaliation with the California Department of Fair Employment and Housing ("DFEH") which assigned case # E200506-G-0450-00c to plaintiff's charge against defendant Salinas Golf and Country Club, Inc.  On or about December 15, 2005 the DFEH issued plaintiff Pitre a right to sue letter on her charge.

42.   On or about January 10, 2006 plaintiff Hedberg filed a complaint of wrongful discharge and retaliation with the California Department of Fair Employment and Housing ("DFEH") which assigned case # E200506-G-0545-00rsc to plaintiff's charge against defendant Salinas Golf and Country Club, Inc.  On or about January 10, 2006 the DFEH issued plaintiff Heberg a right to sue letter on his charge.

43.   As a further result of the wrongs as alleged, plaintiffs Pitre and Hedberg have been required to employ attorneys to prosecute the within action.

**[COMES NOW PLAINTIFF PITRE TO ALLEGE FOR A THIRD CAUSE OF ACTION**
**AGAINST DEFENDANTS SALINAS GOLF AND COUNTRY CLUB, INC.**
**AND RUSSELL BAAR, D.C.,:  HOSTILE WORK ENVIRONMENT**
**IN VIOLATION OF FEHA (*Gov't Code* §12940 et seq)]**

8

44. Plaintiff Pitre hereby incorporates by reference the allegations contained in paragraphs 1 through 31, 41 and 43, inclusive, as though set forth in full.

44. In doing the things alleged herein, defendants Club and Baar created a hostile work environment for plaintiff and other females employed by Club thereby violating *Government Code* §12940.

45. As a result of the wrongful conduct of defendants, plaintiff has been caused to suffer the damages as previously alleged in this complaint.

46. In acting as it did, defendants Club and Baar acted so wantonly, maliciously, oppressively, despicably, and with such a callous disregard of the known rights of plaintiff, so as to entitle her to recover from said defendants punitive damages in amounts to be fixed by the jury.

**[COMES NOW PLAINTIFF PITRE TO ALLEGE FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANT SALINAS GOLF AND COUNTRY CLUB, INC.: FAILURE TO TAKE ALL REASONABLE STEPS TO PREVENT HARASSMENT FROM OCCURRING (*Gov't Code* §12940 et seq)]**

47. Plaintiff Pitre hereby incorporates by reference the allegations contained in paragraphs 1 through 31, 41 and 43, inclusive, as though set forth in full.

48. In doing the things and/or failing to do the things alleged herein, defendant Club failed to take all reasonable steps to prevent harassment from occurring, thereby violating *Government Code* §12940.

49. As a result of the wrongful conduct of defendants, plaintiff has been caused to suffer the damages as previously alleged in this complaint.

50. In acting as it did, defendant Club acted so wantonly, maliciously, oppressively, despicably, and with such a callous disregard of the known rights of plaintiff, so as to entitle her to recover from said defendant punitive damages in amounts to be fixed by the jury.

**[COMES NOW PLAINTIFF PITRE TO ALLEGE FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS SALINAS GOLF AND COUNTRY CLUB, INC. AND BAAR: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS]**

9

51.   Plaintiff Pitre hereby incorporates by reference the allegations contained in paragraphs 1 through 31, and inclusive, as though set forth in full.

52.   In doing the things alleged, in particular by defendant Baar stalking plaintiff Pitre as aforesaid, and thereby causing her to have to move so that he would not know where she lived, defendants, and each of them either intentionally caused plaintiff to suffer emotional distress, or were callously indifferent to the likelihood that their conduct would cause plaintiff to suffer emotional distress, thereby causing her to suffer severe emotional distress as aforesaid.

53.   In acting as they did, defendants, and each of them, acted so wantonly, maliciously, oppressively, despicably, and with such a callous disregard of the known rights of plaintiff, so as to entitle her to recover from defendants punitive damages in an amount to be fixed by the jury.

**[COME NOW PLAINTIFFS PITRE AND HEDBERG TO ALLEGE FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANTS SALINAS GOLF AND COUNTRY CLUB, INC. AND BAAR:   VIOLATION OF UNFAIR COMPETITION LAW**
*(B & P CODE § 17200)]*

54.   Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 50, and inclusive, as though set forth in full.

55.   At all times herein relevant, California *Business & Professions Code* § 17200 et seq proscribed as an unfair method of competition any act or practice violative of law.

56.   Plaintiff is informed and believes, and thereon alleges, that unless restrained from doing so defendant Club will continue

(a)   to fail to take all reasonable steps to prevent harassment from occurring;

(b)   to allow the presence of a hostile work environment for its female employees; and

(c)   to retaliate against employees who raise complaints of sexual harassment in the workplace.

57.   Plaintiff is informed and believes, and thereon alleges, that unless restrained from doing so defendant Baar will continue to visit his unwelcome attentions on females who are or may be Baar's subordinates at the Club.

58.   In doing the things alleged herein, defendants Club and Baar, and each of them, violated

10

California *Business & Professions Code* § 17200 et seq, thereby entitling plaintiff to obtain an injunction

    (a)   to require defendant Club to institute measures to take all reasonable steps to prevent harassment from occurring;

    (b)   to require defendant Club to educate its members, officers, directors, employees, managing agents, and supervisors of the need to prevent any hostile work environment for its female employees; and

    (c)   to require defendant Club to educate its members, officers, directors, employees, managing agents, and supervisors of the need to prevent any retaliation against any employees who either

        (i) raise complaints of sexual harassment in the workplace, or

        (ii)  support other employees who have raised such complaints.

    (d)   to prohibit defendant Baar from visiting his unwelcome attentions on females who are or may become employed at the Club.

59.    In bringing this cause of action plaintiffs have been caused to incur attorneys' fees and costs, and thereby seeks an award of same from defendants Club and Baar in an amount to be fixed by the court.

WHEREFORE, plaintiffs Pitre and Hedberg demand trial by jury of all issues of fact as to which a jury trial may be had, and they further pray judgment against defendants as follows:

1.    For general damages in an amount according to proof;

2.    For exemplary and punitive damages in an amount to be fixed by the jury;

3.    For pre-judgment interest in the discretion of the jury;

4.    For special damages according to proof;

5.    For an injunction

    (a)   to require defendant Club to institute measures to take all reasonable steps to prevent harassment from occurring;

    (b)   to require defendant Club to educate its members, officers, directors, employees, managing agents, and supervisors of the need to prevent any hostile work environment for its female employees; and

11

(c)   to require defendant Club to educate its members, officers, directors, employees, managing agents, and supervisors of the need to prevent any retaliation against any employees who either

>   (i) raise complaints of sexual harassment in the workplace, or
>
>   (ii) support other employees who have raised such complaints.

(d)   to prohibit defendant Baar from visiting his unwelcome attentions on females who are or may become employed at the Club.

6.   For attorney's fees,

7.   For all costs of suit incurred herein; and

8.   For such further relief as the Court may deem just and proper in the circumstances.

Dated: January 16, 2006

JOHN ELSON, Attorney at Law

_____
Attorney for plaintiffs
Christina Pitre and Robert Hedberg

12